[Civ. No. 14858. First Dist., Div. One. Feb. 5, 1952.]

GEORGE W. NANCE, Respondent, v. LOUIS DIELISSEN, Appellant.

LOUIS DIELISSEN, Appellant, v. MAX SCHMIDT, Respondent.

Thomas L. Bocci, Jr., and John A. Putkey for Appellant.

Francis A. Guido and W. A. Finger for Respondents.

BRAY, J.—Two cases consolidated for trial and appeal. The defendant in case No. 47384, Dielissen, appeals from a judgment against him and in favor of plaintiff Nance for $2,546.83. In case No. 47414 plaintiff Dielissen appeals from a judgment denying him a recovery against defendant Schmidt.

### QUESTION PRESENTED

Insufficiency of the evidence. The cases are purely factual, the sole issue being what was the oral agreement between the parties.

## Record

In No. 47384 Nance *as assignee of Schmidt* sued Dielissen for $2,546.83 on three common counts, (1) on a book account, for goods, wares and merchandise, (2) on a balance due for goods, wares and merchandise, and (3) on a stated account. The basis for these counts was the purchase price of a tractor sold to Dielissen and paid for by Schmidt. Dielissen then in No. 47414 sued Schmidt on five causes of action. The first was for alleged loss of $25 per lot profit on 114 lots, totaling $2,850. The second and third were for $1,310, based on a claimed withholding by Schmidt of $10 per lot. The fourth cause was to foreclose a mechanic's lien for $695.75 and the fifth for the same amount on a common count, both for work, labor and services. The court found generally in favor of Schmidt's version of the contract and gave judgment in the first action for $2,546.83 against Dielissen and in favor of Nance. In the second action judgment went in favor of Schmidt that Dielissen take nothing under the first three causes of action but that Dielissen recover judgment against Schmidt for $595.75, with interest, and that the mechanic's lien thereon be foreclosed.

## Evidence

■ The difficulty arises out of an oral agreement which was not too definite in the beginning and which was varied by the action of the parties. Its solution depends, in considerable degree, on which party is believed. The court obviously believed Schmidt's version. In view of the conflict we are bound by the trial court's determination.

Max Schmidt is the developer of a certain tract in the city of Millbrae. This tract contains 350 homes, of which 32 are corner lots. In the spring of 1947, 50 of these homes were under construction, but none were corner lots. This was when Schmidt first met Dielissen, a gardening contractor. Schmidt wanted Dielissen to put lawns in front of the houses, which Dielissen did at the price of $36 each. Dielissen put in 30 of such lawns. After Dielissen put in the first 10 lawns, Schmidt complained because the work was going too slowly. Dielissen replied that for more speed a tractor would be needed and that Schmidt should buy it for him and be repaid over a period of time, at the rate of $10 to be deducted from the price of each job. Dielissen claims that it was understood he was to have all the lawns. Yet he admits that at no time did he agree to do all the lawns. Schmidt claims that there

was nothing said about Dielissen's getting all the lawns. Admittedly no number was discussed. Both agreed that corner lawns were not discussed nor the price thereof agreed. At this point, the court could well have determined that it was understood that the arrangement was that Dielissen was to put in all lawns (except corner lawns) at $36 each, that Schmidt was to purchase a tractor for Dielissen and that the sum of $10 per lawn was to be withheld by Schmidt until the tractor was paid for. But, if such was the understanding, the parties did not act under it. Schmidt bought the tractor and turned it over to Dielissen, who used it for all the work he did in the subdivision. At no time was any sum deducted for its payment. Dielissen billed Schmidt each week for the lawns then put in and Schmidt paid the bill in full. Schmidt testified that Dielissen asked him not to make the deductions as he was going to sell his Daly City home and would pay for the tractor then in full, and that it would be too much bookkeeping to deduct from each weekly bill. Dielissen put in 48 lawns at the $36 price. After the tractor was purchased and was being used by Dielissen, he went to Schmidt and said he could not do the lawns for $36 any more, as there was not enough profit. Schmidt then agreed to pay $45 per job. That was the amount paid for all jobs thereafter. Dielissen did altogether about 131 lots. Schmidt testified that Dielissen was so slow that he gave another contractor 70 lawns to put in, which he did in two weeks. Dielissen continued doing lawns while the other contractor was working, and after. Dielissen continued on for almost a year. At the time, Dielissen made no objection to the fact that the other contractor was hired by Schmidt. Schmidt told Dielissen to do the work on the yard of a model home. This was one of the corner lots not mentioned by the parties in the original discussions. When completed Dielissen presented a bill for $574, which was later corrected, because of a mistake, to $475. Schmidt felt it was too high and suggested that another contractor be contacted to determine the reasonable value of the job. They agreed on the California Nursery, which fixed the value at $200 and agreed to do the 32 remaining corners at that price per corner. Schmidt offered these corners to Dieliessn at that price. Dielissen refused. Dielissen testified that Schmidt offered him only $125 per corner.

Dielissen contends that it was originally understood that he was to get the work in the whole tract. The parties never agreed about the price of the corner lots, if their inclusion was

contemplated originally. Dielissen paid for the gas and oil used in the tractor. When the tractor needed repair Schmidt took care of the details by phoning the tractor dealer. Dielissen charged Schmidt for the use of the tractor by Dielissen on jobs for Schmidt other than the lawns.

As to the indefiniteness of the understanding between the parties, it might be pointed out that in his complaint Dielissen alleges that under the agreement he was to be paid $55 per lawn. There is no mention of that sum by either party in the evidence. Admittedly the price originally was $36 and was later raised to $45. Dielissen was paid in full for all work done by him, except the model home corner and some grading across the street. These are the amounts included in the mechanic's lien claim.

While the court could have found differently, the evidence reasonably supports the conclusion that there never was any promise that Dielissen was to have all the noncorner lots in the tract (certainly there was no claim of agreement on Dielissen's part that he would put in all the noncorner lots) and that if originally there was such agreement it was modified by the conduct of the parties. Therefore, the evidence supports the court's refusal to award Dielissen the $2,850 sued for, which amount was based on a claimed profit of $25 per lot for those upon which he was not allowed to install lawns, and also the court's finding that there were no sums withheld by Schmidt. It also supports the court's finding that Dielissen agreed to pay Schmidt the purchase price of the tractor and that its payment was not conditional on Dielissen's doing all the lawns in the tract, and that Nance as assignee of Schmidt should recover its purchase price and the amounts expended by Schmidt thereon for repairs, totaling $2,546.83. The mechanic's lien claim of $595.75 in favor of Dielissen is for the work done by him on the model house corner and a lot across the street therefrom. Schmidt did not appeal from the judgment, and Dielissen is satisfied with it.

The judgments are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.